## INSURANCE COMPANY *v.* HOUSE.

### (*Nashville.* December 16, 1890.)

1. INSURANCE, FIRE. *Requirement of foreign company as to cash capital.*

   The statutory requirement that a foreign fire insurance company, before engaging in business in this State, shall be "possessed of at least two hundred thousand dollars of paid-up, actual cash capital, of which at least one hundred thousand dollars shall be invested in United States bonds," etc., is not sufficiently met by showing that such company, being a mutual, had the required amount in *cash assets,* with $100,000 invested in United States bonds. Cash assets are not the equivalent of cash capital.

   Acts construed: Acts 1875, Ch. 109; Acts 1887, Ch. 187.

   (See now Acts 1890–91.)

2. SAME. *Same. Insurance Commissioner's duty. Mandamus.*

   And the Insurance Commissioner performs his plain duty in refusing admission and license to such non-complying company, and will not therefore be interfered with by mandamus.

   *Question reserved:* Will the Court compel the Commissioner, by mandamus, to reverse his judgment and grant admission and license where they have been wrongfully refused to a foreign company?

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. ANDREW ALLISON, Ch.

VERTREES & VERTREES for Insurance Company.

J. C. McREYNOLDS and Attorney-general PICKLE for House.

LEA, J. This is a petition for mandamus to compel M. F. House, the Insurance Commissioner of Tennessee, to issue a license to the complainant company, authorizing it to transact fire insurance business in this State.

Complainant is a mutual fire insurance company chartered under the laws of the State of New York. Our statutes, Acts of 1875 and 1887, provide it shall not be lawful for any insurance company, not organized under or incorporated by the laws of this State, to transact any business of insurance in this State, through agents or otherwise, unless possessed of at least two hundred thousand dollars of paid-up, actual cash capital, of which at least one hundred thousand dollars shall be invested in bonds of the United States or some one or more of the States, reckoning the same at their current market value, and shall file a certified statement with the Commissioner, exhibiting the facts and items required by our statutes; and it is further provided in Sec. 5, Acts of 1875, Ch. 109, "that whenever any insurance company, as provided in Sec. 1, shall have fully complied with all the requirements of this Act, and the Commissioner is satisfied that the affairs of such company are in a sound condition, he shall issue certificates of authority to such persons as the com-

pany may designate, authorizing them to transact the business of insurance in this State."

There was a demurrer filed to the petition, setting forth, among other grounds, that the action of the Insurance Commissioner in granting or refusing to grant license to do business in this State is discretionary and judicial, and, having refused license, mandamus will not lie to .compel him to issue license as prayed for; that complainant is a company organized under the laws of New York, and has not a paid-up, actual cash capital as required by statute before license can be granted; that no fire insurance company doing business on the mutual plan, and without capital stock, can be licensed under the laws of this State; and that the petition fails to show that the company has complied with all the provisions of the statutes, or that the Commissioner is satisfied of the sound condition of the company.

The demurrer was sustained, and the petition dismissed, and petitioners have appealed and assigned errors, and quite a number of interesting questions have been presented and ably and earnestly argued. We enter into no discussion of the question whether an officer clothed with discretion, and who has exercised that discretion, can have his decision reviewed by a writ of mandamus, or whether the writ will lie when insufficient reasons are given for his decision, or for a misconstruction of the law applicable to the subject upon which he bases his decision.

The Commissioner refused to grant complainants license to do business in this State for the following reasons, as set forth in a letter to its attorneys: "Because its statement filed in this office is not in conformity to the requirements of our statute, in that it does not show an actual, paid-up cash capital of two hundred thousand dollars, as is provided by statute, and for the further reason that, being a purely mutual company, it cannot comply with this provision and other provisions of our statute regulating and providing for the admission of fire insurance companies to this State."

The statutes—Acts of 1875, Ch. 109; Acts of 1887, Ch. 187—require a paid - up, actual cash capital of two hundred thousand dollars, but it is insisted that this company has more than that amount in a fund known as an advance premium fund, more than one hundred thousand of which is invested in United States bonds, and more than that amount in assets of the company, and that this is a compliance with the requirements of the law requiring a paid-up, actual cash capital. We do not think so. The advance premium fund is a fund raised by subscribers paying for insurance in advance, and the amount of assets of the company is not an equivalent.

In the Acts of 1875 and 1887 the company is required expressly to have this paid-up capital, one hundred thousand of which shall be invested in United States bonds, and this is the only positive financial requirement by the Acts. It is

provided by the Act that a sworn statement shall be filed with the Commissioner showing assets, amount of money deposited in bank, premiums, losses, etc., but this statement is to satisfy the Commissioner of the solvency of the company, but no amount of assets is designated, no amount of cash in bank, but the Acts provide affirmatively that there must be a paid-up, actual cash capital before the company can be licensed to do business in the State. This must appear, although the Commissioner, might be otherwise satisfied—from the advance premium fund, and from the amount of assets—that the company was entirely solvent. This is no technical or restricted construction of the statute, but is the plain legislative intent as gathered from the language of the Act.

The decree sustaining the demurrer and dismissing the petition is affirmed with cost.